UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In re: <br><br> DAVID M. FONTAINE <br><br> Debtor | Chapter 7 <br> Case No. 10-42843-MSH |
| ANTHONY BARCA <br><br> Plaintiff <br> v. <br><br> DAVID M. FONTAINE <br><br> Defendant | Adversary Proceeding <br> No. 10-4129 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter came before me for trial on the *pro se* plaintiff Anthony Barca's two count complaint seeking a judgment that his debt is not dischargeable in the bankruptcy case of the debtor/defendant David M. Fontaine. This is a core proceeding over which I have jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I). After having heard and considered the testimony and demeanor of the witnesses and reviewed the exhibits admitted in evidence, the following constitute my findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

In 2001, Mr. Barca, owned and operated an unincorporated business called Continental Dynamics which marketed itself as providing "energy solutions to high fuel costs." Mr. Barca developed products for the company including low-cost high-efficiency home heating systems. Mr. Barca had been engaged in this business for a number of years prior to 2001 under a variety of

1

trade names. In 2005, Mr. Barca incorporated Continental Dynamics in Massachusetts as Continental Dynamics Corporation ("CDC").

In 2006, CDC needed to move its place of business. Mr. Barca located suitable space for the office and manufacturing needs of CDC at 9 Water St. in Leicester Massachusetts, the property owned by Mr. Fontaine. In October 2006, Mr. Barca and Mr. Fontaine negotiated a tenancy at will for CDC at the 9 Water St. property to begin on November 1st of that year. CDC paid Mr. Fontaine first and last months' rent and began moving its machinery, equipment, parts, tools and office furnishings into its new space. Mr. Barca also moved to CDC's space at the Water Street property household furniture he had inherited from his mother.

In December 2006, Mr. Barca initiated the process of obtaining a "dual fuel permit" from the Town of Leister to enable CDC to maintain natural gas and propane fuel supplies at its new location. On January 31, 2007, the Leister building inspector, Jeffrey Taylor, along with the Leister fire chief, met Mr. Barca to view CDC's facility in connection with the process of issuing a dual fuel permit to CDC. During this meeting the building inspector and fire chief inspected not only CDC's space but the interior of the 9 Water St. property generally. In February 2007, Mr. Barca met with Mr. Taylor who handed Mr. Barca a copy of a letter dated February 21, 2007 from Mr. Taylor to Mr. Fontaine as the building's owner notifying Mr. Fontaine that the CDC's use of the 9 Water St. property was noncompliant with the town's bylaws and that construction activity within the property was taking place in violation of existing permits and town regulations. The letter demanded that Mr. Fontaine cease and desist from the offending use and construction activities. In late February 2007, the entrance to the 9 Water St. building was padlocked thereby depriving Mr. Barca access to CDC's space. Mr. Barca, whose only interaction with Mr.

2

Fontaine had occurred at the 9 Water St. property, was unsuccessful in his attempts to contact Mr. Fontaine to determine what had happened (although it is reasonable to assume he connected the padlocking with the town's cease and desist letter) and to take any steps to gain possession of CDC's or Mr. Barca's property which was locked inside the building.

Shortly before Memorial Day 2007 Mr. Barca discovered that the padlock had been removed from the building. At that time, he entered CDC's space and removed about half of the furniture he had inherited from his mother, as well as the company's computers. He continued to have access to the building and to CDC's space after Memorial Day at which time he observed that a quantity of copper tubing valued at around $1800 had been removed from CDC's space. Mr. Barca reported the loss to the police and met with an officer at CDC's space. Mr. Barca, however, did not file a police report regarding the missing copper tubing. Subsequent to this meeting, the padlock on the building was replaced and Mr. Barca never again had access to the building. Mr. Barca does not know what became of the remainder of the furniture he inherited from his mother or the remaining CDC assets locked inside the 9 Water St. property. He has never recovered any of these assets.

Mr. Barca blames Mr. Fontaine for all his troubles. In January 2008, Mr. Barca and CDC attempted to sue Mr. Fontaine and certain affiliates in the Worcester County Superior Court. A complaint was filed on January 16, 2008. CDC's name was crossed off the caption and in the body of the complaint so Mr. Barca was the sole plaintiff. On December 4, 2008, judgment the superior court dismissed Mr. Barca's complaint. Undaunted, in 2009, Mr. Barca sued Mr. Fontaine and others in the United States District Court for the District of Massachusetts. On April 2, 2009 Mr. Barca's suit was dismissed for Mr. Barca's failure to respond to the court's directive to

demonstrate how the United States District Court had subject matter jurisdiction over a landlord-tenant dispute.

On June 3, 2010, Mr. Fontaine filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code commencing this case. On June 22, 2010, the Chapter 13 case was converted to a case under Chapter 7. Mr. Fontaine did not schedule Mr. Barca or CDC as creditors in his bankruptcy case.

On September 22, 2010 Mr. Barca, acting *pro se* as in his prior state and federal court matters, filed his complaint against Mr. Fontaine commencing this adversary proceeding. The complaint is entitled "Creditor's Opposition to Discharge and Adversary Complaint in Bankruptcy Proceedings for Injunctive Relief Sought (7001) with Triple Damages Demanded under Mass. Gen. Laws 90-A of the Consumer Protection Laws." After various preliminary hearings, it was agreed by the parties that Mr. Barca's complaint would be deemed a complaint objecting to the dischargeability of Mr. Fontaine's debt pursuant to Bankruptcy Code § 523(a)(2)(A) for money, property or services obtained by false pretenses, false representations or actual fraud and §523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny. Mr. Barca alleges that at the time he and Mr. Fontaine negotiated CDC's tenancy at will Mr. Fontaine knew that the Water Street property did not have a certificate of occupancy from the Town of Leicester and thus Mr. Fontaine acted fraudulently or misrepresented the true status of the property. Furthermore, Mr. Barca alleges that Mr. Fontaine either stole the property which had been moved in to the Water Street building or due to Mr. Fontaine's failure to obtain necessary building permits caused the total loss of that property (with the exception of certain property removed by Mr. Barca around Memorial Day 2007) and the loss of Mr. Barca's business because

4

Mr. Barca was denied access to the building.

First of all, I find that the tenancy at will for the space at 9 Water Street in Leicester was between CDC and Mr. Fontaine. Thus to the extent there was any misrepresentation or fraud in the inducement of the tenancy such misrepresentation or fraud was perpetrated against CDC, so CDC, not Mr. Barca, would be the proper plaintiff to assert a §523(a)(2) claim. Even if Mr. Barca were the appropriate plaintiff, however, he has failed to satisfy the test for nondischargeability under § 523(a)(2)(A). Section 523(a)(2)(A) of the Bankruptcy Code makes nondischargeable "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." In order to prove that a debt is nondischargeable under § 523(a)(2)(A), the creditor must show that: (1) the debtor made a knowingly false representation or one made in reckless disregard of the truth; (2) the debtor intended to deceive the creditor; (3) the debtor intended to induce the creditor to rely upon the false statement; (4) the creditor actually relied upon the misrepresentation; (5) the creditor's reliance was justifiable; and (6) the reliance upon the false statement caused damage. *Douglas v. Kosinski (In re Kosinski)*, 424 B.R. 599, 612 (B.A.P. 1st Cir. 2010).

Mr. Barca claims that at the time he negotiated CDC's tenancy, Mr. Fontaine concealed from him the fact that the Water Street building lacked an occupancy certificate. There is absolutely no evidence that at the time the tenancy was negotiated, Mr. Fontaine lacked an occupancy permit for the building much less concealed the lack of one. Rather, as is made clear in Mr. Taylor's February 21, 2007 cease and desist letter, the building was not approved for the use CDC wished to engage in, which use was disclosed to the town authorities by Mr. Barca when he

5

met with the building inspector and fire chief at CDC's space on January 31, 2007. At that time it was also discovered that no one bothered to pull a building permit to do interior construction in the property. No credible evidence suggests that at the inception of CDC's tenancy Mr. Fontaine was aware of the use CDC intended at the property or, even if he had been aware, that Mr. Fontaine agreed to obtain a permit for CDC's intended use or building permit for CDC's construction. On the contrary, the evidence shows that it was CDC and Mr. Barca who initiated the use permit process. None of this suggests that in October 2006 when CDC and Mr. Fontaine negotiated the tenancy the building lacked a certificate of occupancy. Thus the claim under § 523(a)(2)(A) fails.

Mr. Barca has also failed to carry his burden of proving a claim under § 523(a)(4). First, the parties had only an ordinary commercial landlord-tenant relationship under which no fiduciary duties are owed. *Salinsky v. Perma-Home Corp.*, 15 Mass.App.Ct. 193, 197, 443 N.E.2d 1362 (1983). And this relationship was between Mr. Fontaine and CDC. Moreover, there is no evidence that Mr. Fontaine engaged in any fraud. Mr. Barca's allegations of embezzlement or larceny after commencement of CDC's tenancy are purely speculative. There is no evidence to support a finding that Mr. Fontaine stole any of CDC's or Mr. Barca's property. No evidence was presented as to who padlocked the Water Street building. The evidence suggests that it was the result of the February 21st cease and desist letter from the town, not as part of some nefarious plot by Mr. Fontaine to drive CDC out of business and grab its property.

Should Mr. Fontaine have initiated and maintained better communications with his tenants when the building was padlocked? Absolutely, but his failure to do so does not create the claims Mr. Barca presses in his complaint. If incompetence or inattentiveness were grounds for excluding a debt from discharge, debt relief through bankruptcy would be rare indeed. The fact

that Mr. Barca was never able to successfully navigate his way back into the building to remove his and CDC's property is as much his fault as anyone else's. I find it incredible that Mr. Barca allowed virtually the entire fruit of his many years of hard work simply to evaporate. He claims he could not locate Mr. Fontaine to arrange access to the Water Street building. This excuse stretches credulity beyond its breaking point and certainly makes Mr. Barca equally if not more responsible for what he claims was the total loss of his business and the remaining furniture he inherited from his mother.

In sum, all claims relating to the contracts and assets of CDC belong to CDC and Mr. Barca lacks standing to assert those claims (although even if asserted by CDC the evidence is lacking to support them). As to any claims belonging to Mr. Barca, namely the loss of his mother's furniture and the loss of his business investment, Mr. Barca has failed to carry his burden that such losses were the result of false pretenses, false representations, actual fraud, defalcation, embezzlement or larceny by Mr. Fontaine.

Judgment shall enter for the defendant on all counts of the complaint..


Dated: September 26, 2011                          By the Court,

                                                   /s/ Melvin S. Hoffman

                                                   Melvin S. Hoffman
                                                   U.S. Bankruptcy Judge


7